IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANNE BUCCI, for and on behalf of MATTHEW CHARLES ELAND, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. 19-368 |
| v. | )<br>) CHIEF MAGISTRATE JUDGE<br>) CYNTHIA REED EDDY |
| ANDREW M. SAUL,<br>    Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | ) |

## OPINION

Pending before the court are cross-motions for summary judgment (ECF Nos. 7, 14). Both parties have filed briefs in support of their motions (ECF Nos. 8, 17), Plaintiff has filed a reply brief (ECF No. 18) and defendant has filed a sur-reply (ECF No. 24). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 7) is denied and Defendant's Motion for Summary Judgment (ECF No. 14) is granted.[1]

## I. Background

Plaintiff[2] brought this action for review of the final decision of the Commissioner of Social Security denying his applications for supplemental security income and disability insurance benefits pursuant to the Social Security Act. 42 U.S.C. §§ 404-434, 1381-1383f.

---

[1] Under the Federal Magistrate Judges Act ("the Act), a Magistrate Judge's jurisdiction may be conferred by consent of the parties. 28 U.S.C. § 636(c). Under the Act, "[u]pon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court." 28 U.S.C. § 636(c)(1). The parties have consented to jurisdiction of a Magistrate Judge. (ECF Nos. 6, 13).

[2] The original named Plaintiff and claimant was Matthew Eland. Due to his death, by order dated November 19, 2019 (ECF No. 20), the court granted the Motion for Substitution and Amend Caption whereupon his mother Diane Bucci is the named Plaintiff.

1

Plaintiff filed his applications alleging he has been disabled since April 1, 2015, due to a seizure disorder, back injuries resulting from the seizure disorder, anxiety, attention deficit disorder, and osteoporosis. (Tr. 198-211, 243). The Administrative Law Judge ("ALJ") held a hearing on September 13, 2017, where Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (Tr. 33-70, 71-102). On May 2, 2018, the ALJ found that Plaintiff was not disabled under the Act. (ECF Tr. 9-32).

After exhausting all administrative remedies, Plaintiff filed the instant action with this court. The parties have filed cross-motions for summary judgment, and the issues are now ripe for review.

## II. Legal Analysis

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See*, 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

The ALJ determined that Plaintiff had the severe impairments of traumatic brain injury (TBI) and mild neurocognitive disorder secondary to TBI; closed fracture of dorsal thoracic vertebra without mention of spinal cord injury; unspecified epilepsy without mention of intractable epilepsy; other osteoporosis; grand mal seizure disorder; generalized disc bulging with mild bilateral foraminal encroachment and no significant canal encroachment; L5-S1 mild to moderate generalized disc bulging with central disc protrusion; mild loss of height of several lumbar vertebral bodies with Schmorl nodes and multilevel degenerative disc disease at L5-S1; osteoarthritis of the lumbar spine with radiculopathy; grade 1 retrolisthesis at L5-S1 and right shoulder instability with suspected labral injury following a seizure; major depressive disorder in context of chronic epilepsy and central cognitive dulling secondary to anticonvulsants, rule out attention deficit disorder (ECF No. 3, hereinafter "Tr.", 14-15), all of which did not singly or in combination satisfy the criteria of any listed impairment in 20 C.F.R. pt. 404, subpt. P, app'x 1, including Listing 11.02 (convulsive epilepsy) (Tr. 15-17). The ALJ found that Plaintiff could perform a very limited range of light work (Tr. 17), which precluded the performance of his past relevant work as a sales manager (Tr. 23). Based on the testimony of the vocational expert, the ALJ determined that there was other work that existed in significant numbers in the national economy Plaintiff could perform, and, therefore, he was not disabled under the Act (Tr. 23-24).

**B. Whether the ALJ erred in determining that Plaintiff did not meet or medically equal the severity of Listing 11.02 – Epilepsy**

Plaintiff argues that the ALJ erred at step three of the evaluation in determining that Plaintiff did not meet an impairment in the Listings. (ECF No. 8, pp. 8-9). To that end, Plaintiff argues that the ALJ erred in finding he did not meet the requirements of the listing regarding convulsive epilepsy because Plaintiff "does not have seizures occurring at least once a month" and that the finding is contrary to the evidence in the record.

An applicant is *per se* disabled if the impairment is equivalent to a listed impairment and, thus, no further analysis is necessary. *Burnett v. Commissioner*, 220 F.3d 112, 119 (3d Cir. 2000). Listing 11.02, effective at the time of the ALJ's decision, can be met "where the claimant experiences generalized tonic-clonic seizures at least once per month for three consecutive months, or where the claimant experiences dyscognitive seizures at least once per week for three consecutive months, despite adherence to prescribed treatment." *Snow v. Berryhill*, Civ. No. 18-434, 2019 WL 1873551, at *4 (N.D. Ind. April 26, 2019), *citing*, 20 C.F.R. Part 404, Supbpt. P, App. 1 (Listing 11.02(A) and (B)).[3] Listing 11.02 can also be met "where the claimant experiences less frequent but more severe seizures that result in marked limitations in the claimant's ability to function." *Id.*, at *4, n. 2, *citing*, 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing 11.02(C) and (D))[4]; *see also Grancea v. Saul*, No. CV 18-1357, 2019 WL 4393371, at

---

[3] The Listing states:
a. Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.
b. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure (see 11.00H1a).
[4] Subsection C requires that the claimant experience generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

*2 (W.D. Pa. Sept. 13, 2019). The Listing explains that limitations from neurological disorders exist despite adherence to "prescribed treatment," defined as a claimant having taken medication(s) or followed other treatment procedures for the neurological disorder(s) as prescribed by a physician for three consecutive months but the impairment continues to meet the other listing requirements despite this treatment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1

First, we note that Plaintiff fails to identify which paragraph of Listing 11.02 (A, B, C, or D) he believes his impairments met or equaled, and he also fails to cite to the record. (ECF No. 8 at 3, 8-9). Some courts have held such "superficial argument constitutes a waiver of the issue" and that a sufficiently detailed analysis from the ALJ can provide for meaningful judicial review. *McConnell v. Astrue*, 2010 WL 2925053 *5 (W.D. Pa. July 20, 2010), *citing Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D. Colo. 1999).

In support of his motion, plaintiff argues that the ALJ incorrectly found his condition does not meet the requirements of Listing 11.02 when he found Plaintiff "does not have seizures occurring at least once a month." He cites opinion evidence from Dr. Kevin Kelly, Dr. John Holets, and Dr. Mary Flaherty, as well as Plaintiff's testimony and monitoring "not long before the hearing" that Plaintiff had five seizures during a six-day test/admission.

I find that substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet these requirements at step three. The longitudinal record showed that Plaintiff's

---

    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv))
Subsection D requires that the claimant experience dyscognitive seizures, occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv)).

seizures were controlled when he was compliant with his medications and he experienced seizures when he was not compliant with his medications (Tr. 18, 20, 549, 626, 918-19, 920, 934, 1251-52, 1158-59). Additionally, medical expert Ronald Devere, M.D., noted that Plaintiff's history of heavy drinking could cause seizures, blood testing showed very low levels of seizure medication indicating "that compliance with medications is very poor," indicating sub-optimal compliance with prescribed treatment; he ultimately concluded that Plaintiff's impairments did not meet or equal Listing 11.02. (Tr. 1313-14, 1127, 1159). Also, state agency medical consultant Dilip Kar, M.D. reviewed the evidence and considered Plaintiff's impairments in light of Listing 11.02 but did not find that the listing was satisfied. (Tr. 93-96). Furthermore, in March 2018, Plaintiff reported a seizure consisting of staring off for 2 minutes and did not fall. (Tr. 1345). This evidence does not include a loss of consciousness, as required to fall under the definition of a tonic-clonic seizure. 20 C.F.R. § 404 Subpt. P, App. 1, at § 11.00(H)(1)(a).

     Under the record before us, Plaintiff has not met his burden of producing objective evidence documenting that his impairment or combination of impairments meets or equals the criteria set forth in the listing. He simply points to several physicians' opinions without citing to underlying objective medical evidence documenting a proposed finding that he suffered 1-2 seizures per month. Titles II & Xvi: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P (S.S.A. July 2, 1996). The substantial evidence, defined as more than a mere scintilla, supports the ALJ's conclusion that Plaintiff's impairments did not satisfy Listing 11.02, and for that reason, the decision is affirmed.

## C. Whether Substantial Evidence Supports the ALJ's Evaluation of the Medical Source Opinions

Next we address Plaintiff's argument that the ALJ erred in evaluating the opinions of Kevin Kelly, M.D. John Holets, M.D. and Mary Flaherty, D.O. (Pl.'s Br. at 4-5). Specifically, Plaintiff argues the ALJ failed to follow the "treating physician rule" by discounting the opinions without an adequate explanation or "substantial contradictory evidence" (Pl.'s Br. at 4-5).

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only where an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. Id. "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* § 416.927(c)(4).

If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the

record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id*. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record. *Becker v. Comm'r of Social Sec. Admin.*, No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r of Soc. Security*, 577 F.3d 500, 505 (3d Cir. 2009).

After a review of the record, it is clear that the ALJ supported the finding that the opinions were not fully consistent with the other evidence of record and were not entitled to controlling weight. *See* Tr. 22, 1086-88 (Dr. Flaherty); Tr. 22, 1090-93, 549, 626, 918-20, 934, 1251-52, 1158-59 (Dr. Holets); and 22, 1138-41 (Dr. Kelly). Moreover, the ALJ properly gave Dr. Devere's opinion great weight based on the overall record evidence. *Chandler v. Comm'r of Social Sec. Admin,*, 667 F.3d , 361 (3d Cir. 2007). Furthermore, Plaintiff has not cited to relevant record evidence to support the doctor's opinions to the contrary.

### C. Whether the Residual Functional Capacity (RFC) is Supported by Substantial Evidence

Plaintiff additionally argues that the ALJ's residual functional capacity ("RFC")2 determination is flawed because he improperly credited the non-examining physician's opinion

over his treating physicians. As noted previously, if the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin,* 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The substantial evidence supports the ALJ's finding that the opinions at issue were not entitled to controlling weight because they were internally inconsistent and not consistent with the record as a whole, and indeed, plaintiff has provided no supporting evidence to meet his burden of proof. In particular I note the record evidence does not support Plaintiff's argument that he could not work on a regular and continuing basis. The ALJ explained that the opinion of neuropsychologist Michael Franzen, Ph.D. was entitled to only partial weight because it was not consistent with the evidence. Plaintiff exhibited stable mental health when he complied with

medication and was assigned a Global Assessment of Functioning Score of 60 (upon undergoing detox and rehabilitation for drugs and alcohol). Tr. 21-22, 932-40, 1214). Mental limitations were included in the ALJ's RFC, in particular, that he could only understand, remember and perform simple, routine, and repetitive tasks. (Tr. 17). The ALJ considered the range of activities Plaintiff engaged in, including jogging, working part-time, and driving, when he found that Plaintiff could not perform his past relevant work. The ALJ also appropriately accounted for Plaintiff's physical limitations and injuries, including his bilateral rotator cuff, by limiting his work to not involving more than occasional pushing/pulling, reaching overhead, and frequently reaching in all other directions. (Tr. 17).

For these reasons, more than a mere scintilla of evidence supports the ALJ's conclusions, and the decision is affirmed.

## III. Conclusion

The Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Subchapter II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Jesurum v. Secretary of U.S. Department of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied sub nom.*, 507 U.S. 924 (1993); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

An appropriate order will be entered.

Dated: February 12, 2020

/s/*Cynthia Reed Eddy*
Cynthia Reed Eddy
Chief United States Magistrate Judge